IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RICHARD MEDINA,

    Plaintiff,

vs.                                No. CIV-13-00619 KG/CG

BAYARD CITY CHIEF OF POLICE
SAM CHARBAGI, and THE CITY OF BAYARD,

    Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court upon Defendants' Motion for Summary Judgment (Motion for Summary Judgment) and their memorandum in support of the Motion for Summary Judgment, filed on March 31, 2014.  (Doc. 38).  On June 10, 2014, Plaintiff filed a response to the Motion for Summary Judgment and on July 1, 2014, Defendants filed a reply.  (Docs. 56 and 63).  Having reviewed the Motion for Summary Judgment, the accompanying briefs, and the evidence of record, the Court grants Defendants' Motion for Summary Judgment.

I.     *The Second Amended Complaint (Doc. 23)*

This civil rights deprivation and state tort lawsuit arises from an alleged use of excessive force by Defendant Sam Charbagi (Charbagi), on June 15, 2011, and the subsequent criminal prosecution against Plaintiff.  Plaintiff brings this lawsuit under 42 U.S.C. § 1983 and the New Mexico Tort Claims Act (NMTCA) against Defendant Charbagi and Defendant City of Bayard (City).

In Count I, Plaintiff brings a Section 1983 claim against Defendant Charbagi for

unreasonable seizure in violation of the Fourth Amendment.[1]   In Count II, Plaintiff alleges a Section 1983 claim against Defendant Charbagi for excessive use of force in violation of the Fourth Amendment.  In Count III, Plaintiff asserts a Section 1983 claim against Defendant Charbagi for retaliation of free speech in violation of the First Amendment.  In Count IV, Plaintiff alleges Defendant Charbagi committed the state tort of malicious abuse of process.  In Count V, Plaintiff contends that all Defendants committed state torts.  Specifically, City committed the state torts of negligent battery, and negligent hiring, training, supervision. Plaintiff further alleges that Defendant Charbagi committed a battery.  In Count VI, Plaintiff asserts a Section 1983 against City for Defendant Charbagi's constitutional violations and negligent training.  In Count VII, Plaintiff asserts that all Defendants violated Title II of the Americans with Disabilities Act (ADA).

Defendants now move for summary judgment on all 42 U.S.C. § 1983 claims and NMTCA claims.  Defendant Charbagi raises a qualified immunity defense with respect to the Section 1983 claims.   Plaintiff opposes the Motion for Summary Judgment in its entirety.

II.     *Standard of Review*

Summary judgment is appropriate if there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.  *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Only then does the burden shift to the non-

---

[1]  The Court notes that, in Plaintiff's response (Doc. 56), Plaintiff voluntarily withdrew his Section 1983 Fourth Amendment unreasonable seizure claim (Count I) and, accordingly, this claim is dismissed with prejudice.

movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996) (citation omitted). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

When a defendant moves for summary judgment on the basis of a qualified immunity defense, the Court "still view[s] the facts in the light most favorable to the non-moving party and resolve[s] all factual disputes and reasonable inferences in its favor." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). Unlike other affirmative defenses, the plaintiff bears the burden of overcoming the defense of qualified immunity. *Id.* At the summary judgment stage, the Court "must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Id.* Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains. *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996).

If the plaintiff successfully carries his two-part burden, the burden then shifts to the defendant. *Id.* At that point, a defendant must show that there are no disputes of material fact about whether his conduct was objectionably reasonable in light of clearly established law and the information known to the defendant at the time. *Id.* A motion for summary judgment based on qualified immunity, however, should be "properly denied," if "the record shows an unresolved dispute of historical fact relevant to" the qualified immunity analysis. *Olsen v.*

*Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002) (citations omitted).

III.     *Facts and Reasonable Inferences Viewed in the Light Most Favorable to Plaintiff*[2]

On the June 15, 2011, Frank Ryan (Ryan), an employee with the Cobre School District and an EMT with the Santa Clara Fire Department, was called to the Cobre School District maintenance department because Plaintiff, a Cobre School District employee, was acting abnormally.  (Doc. 38-2) at ¶¶ 1-3; (Doc. 56) at 1; (Doc. 56-2) at 2 (depo. at 46).  When Ryan arrived on scene, Plaintiff was standing and resting his head against a shelf.  (Doc. 38-2) at ¶ 4.  Ryan proceeded to ask Plaintiff what was wrong and Plaintiff stated, "nothing."[3] *Id.* at ¶ 5.  Ryan again asked Plaintiff what was wrong and whether Plaintiff was experiencing chest pain.  *Id.* at ¶¶ 6-7; (Doc. 56-1) at 2 (depo. at 6).  At first Plaintiff responded, "f*** no," but at some point stated that his arm hurt.  (Doc. 38-2) at ¶¶ 6-7; (Doc. 56-1) at 2 (depo. at 6).  Ryan continued to ask medical questions, including whether Plaintiff was a diabetic.  (Doc. 38-2) at ¶ 8; (Doc. 56-1) at 2 (depo. at 7).  Plaintiff said, "F*** no, I'm not a diabetic."  (Doc. 38-2) at ¶ 8.  Ryan continued to ask Plaintiff if he was diabetic, Plaintiff responded each time, "f*** no." *Id.* at ¶ 9.  Ryan then asked Plaintiff if he could check Plaintiff's blood sugar, but Plaintiff refused.  *Id.* at ¶ 11.

As Ryan continued to rule out potential medical issues, Plaintiff proceeded to slump over against the shelf. (Doc. 56-1) at 2 (depo. at 8).  Ryan and Albert Caldera (Caldera), a Cobre School District employee, attempted to place Plaintiff in a chair, but he refused to sit.  *Id.*  Instead, Plaintiff began to wander around the area and walked up behind Caldera.  (Doc. 56-1) at

---

[2]  Unless otherwise noted, the summary of material facts is undisputed.

[3]  It is important to note that in his response, Plaintiff does not dispute the following facts, but claims they are immaterial because Plaintiff cannot recall the events due to his diabetic seizure.  (Doc. 56) at 4; *see also* (Doc. 56-3) at 3 (depo. at 27).  Because Plaintiff's arguments in his response rely on Defendant Charbagi's awareness that Plaintiff was suffering from a diabetic seizure, the Court finds the following facts to be essential to determining if summary judgment is proper.

2 (depo. at 8).  Once Plaintiff was behind Caldera, Plaintiff grabbed Caldera in a "bear hug" and picked him up.  *Id.*; (Doc. 56-4) at 2 (depo. at 11).  Moments later, Plaintiff let go of Caldera and then he exited the building.  (Doc. 38-2) at ¶ 13; (Doc. 56-1) at 2 (depo. at 8).

Shortly thereafter, Plaintiff returned to the building and from behind placed Ryan in a "bear hug."  (Doc. 56-1) at 2 (depo. at 9).  Ryan repeatedly told Plaintiff to release him, but Plaintiff refused.  (Doc. 38-2) at ¶ 14; (Doc. 56-1) at 2 (depo. at 9).  Due to Plaintiff's refusal to release him, Ryan swung his body to force Plaintiff off of him.  (Doc. 38-2) at ¶ 15; (Doc. 56-1) at 2 (depo. at 9).  Plaintiff fell to the ground and remained on the ground for a few minutes. (Doc. 38-2) at ¶¶ 15-16; (Doc. 56-1) at 2 (depo. at 9).  Ryan again asked Plaintiff, "what is going on," and Plaintiff would not respond.  (Doc. 56-1) at 2 (depo. at 9).  After a few moments, Plaintiff reached up to Ryan for assistance to get up from the ground. (Doc. 38-2) at ¶ 16; (Doc. 56-1) at 2 (depo. at 9).  After Ryan helped Plaintiff stand, Plaintiff again began to wander and then he exited the building.  (Doc. 56-1) at 2 (depo. at 9).  At this point, Ryan contacted the Bayard Police Department dispatch on his EMT radio and requested assistance with an "out of control" male subject.  (Doc. 38-2) at ¶ 18.

Subsequently, Defendant Charbagi, the Chief of Police for the City of Bayard, arrived on scene.  (Doc. 38-2) at ¶ 18.  Ryan informed Defendant Charbagi of Plaintiff's aggressive behavior, including that Plaintiff threatened and grabbed Ryan and Caldera.  *Id.* ¶ 19; (Doc. 38-1) at ¶ 5.  As Defendant Charbagi began approaching Plaintiff, Plaintiff started walking toward Defendant Charbagi with both fists raised and repeatedly yelling, "I'm going to kick you're f***ing a**."  (Doc. 38-1) at ¶¶ 7-8, 10; (Doc. 56-1) at 3 (depo. at 10); (Doc. 56-5) at 2 (depo. at 20).  Defendant Charbagi told Plaintiff to keep his distance and stand against a nearby truck. (Doc. 38-1) at ¶ 9, 10; (Doc. 38-2) at ¶ 21; (Doc. 56-1) at 3 (depo. at 10).  Plaintiff did not

comply.  (Doc. 38-2) at ¶ 22; (Doc. 56-1) at 3 (depo. at 1-12).  Instead, Plaintiff repeatedly walked quickly toward Defendant Charbagi, made verbal threats to "kick his a**," then walked away quickly, but remained in close proximity to Defendant Charbagi.[4]  (Doc. 38-2) at ¶ 22; (Doc. 56-1) at 3, 5 (depo. at 10-13, 70); (Doc. 56-4) at 4 (depo. at 20).  During Plaintiff's repetitive behavior, Defendant Charbagi gave Plaintiff several warnings to stay away.  (Doc. 38-2) at ¶ 21; (Doc. 56-1) at 3-4 (depo. at 10, 12-13, 16-17).  Defendant Charbagi also warned Plaintiff that he would tase Plaintiff if he did not comply.  (Doc. 56-1) at 3-4 (depo. at 13-14).

When Plaintiff again refused to comply, Defendant Charbagi deployed a taser burst in Plaintiff's lumbar area.[5]  (Doc. 38-1) at ¶ 9, 10; (Doc. 38-2) at ¶ 21.  On contact, the taser delivered 50,000 volts for a five second period.  (Doc. 63-2) at 3 (depo. at 16-17).  During that time, Defendant Charbagi repeatedly instructed Plaintiff to get down to the ground.  (Doc. 38-1) at ¶ 12; (Doc. 38-2) at ¶ 23; (Doc. 63-2) at 4 (depo. at 19).  Plaintiff continued to stand, yell, cuss, and make verbal threats directed at Defendant Charbagi.[6]  (Doc. 56-1) at 5-6 (depo. at 19, 26); (Doc. 63-2) at 4 (depo. at 18).  Defendant Charbagi then administered a second tase for five

---

[4]  Plaintiff disputes that his behavior was aggressive at this point in the incident.  Plaintiff contends that Ryan testified that Plaintiff's tone was aggressive, not his behavior.  *See* (Doc. 56) at 5.  Plaintiff, however, misconstrues Ryan's testimony.  In his deposition, Ryan testified that Plaintiff's tone was aggressive when Ryan asked Plaintiff several medical questions.  (Doc. 56-1) at 2 (depo. at 7).  Ryan further testified and provided an affidavit stating that prior to and when Defendant Charbagi arrived, Plaintiff was exhibiting aggressive behavior.  *See* (Doc. 38-2); (Doc. 56-1) at 3 (depo. at 10-13).  Plaintiff has failed to present any evidence pursuant to Fed. R. Civ. P. 56(c) to support a factual dispute that his behavior was nonaggressive at this stage of the incident.

[5]  Plaintiff contends Caldera testified that Plaintiff was limping away from Defendant Charbagi when the taser was deployed.  *See* (Doc. 56-4) at 4 (depo. at 19-20).  Defendants argue that Plaintiff's "purported fact is blatantly contradicted by the record of evidence."  (Doc. 63) at 9.  Specifically, Ryan and Defendant Charbagi testified that Plaintiff was walking toward Defendant Charbagi and was in close proximity to Defendant Charbagi when Plaintiff stopped walking.  (Doc. 56-1) at 4-5 (depo. at 16-19); (Doc. 63-2) at 2-3 (depo. at 13-16).  Defendant Charbagi then stepped around Plaintiff to deploy the taser.  (Doc. 63-2) at 3 (depo. at 14-15).  Defendants further assert that Caldera's testimony is unreliable and inconsistent.  (Doc. 63) at 9.  The Court, after reviewing the record evidence, finds that Plaintiff's version of this fact cannot be adopted because it is significantly contradicted by the record.  *See Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).

[6]  Plaintiff disputes this fact and argues that he was nonthreatening and Defendant Charbagi only tased him because he was standing.  In support of his assertion, Plaintiff proffered a section of Defendant Charbagi's deposition.  (Doc. 56-5) at 2 (depo. at 19 ¶ 14-16).  Plaintiff's version of this fact, however, is blatantly contradicted by record evidence.  *See Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).

seconds.  (Doc. 63-2) at 4-5 (depo. at 17-18).  Plaintiff finally got down on his knees, but continued to resist Defendant Charbagi's attempts to place him in handcuffs.  (Doc. 56-1) at 6 (depo. at 28-29); (Doc. 63-2) at 4 (depo. at 20).  Due to Plaintiff's continued resistance, Ryan assisted Defendant Charbagi with placing handcuffs on Plaintiff.  (Doc. 38-1) at ¶ 14; (Doc. 38-2) at ¶ 21.

Once Plaintiff was restrained, Defendant Charbagi dispatched for an ambulance to medically evaluate Plaintiff according to Bayard Police Department procedures.  (Doc. 38-1) at ¶ 16.  After an ambulance arrived, the EMT's determined that Plaintiff was diabetic and his blood sugar was low.  (Doc. 38-1) at ¶ 17; (Doc. 38-2) at ¶ 26.  Defendant Charbagi informed Plaintiff that he would not take him into custody due to his current medical condition, nonetheless, he would file criminal charges for assault on a police officer.  (Doc. 38-1) at ¶ 18; (Doc. 63-2) at 5 (depo. at 23).

A few days after June 15, 2011, Defendant Charbagi completed a use of force form titled, Supervisory Taser Use Report, detailing the incident, Defendant Charbagi's reasons for utilizing his taser, and the number of cartridges fired and cycles applied.  (Doc. 63-2) at 9 (depo. at 57); (Doc. 63-4) at 2-4.  Additionally, at some point following the incident, Plaintiff contacted Defendant Charbagi to request a copy of the police report.  (Doc. 56) at 9, ¶ 27.  Defendant Charbagi responded in a voicemail stating, in relevant part, "I haven't done a report yet.  If I do report, I'm possibly going to file charges.  So I'm still thinking about it." [7]  (Doc. 56-7) at 2.

On September 13, 2011, Plaintiff, through counsel, sent a tort claims notice to City regarding the June 15, 2011, incident.  (Doc. 56-8) at 1-2.  Defendant Charbagi was notified of the tort claim the morning of September 13, 2011.  (Doc. 56-5) at 6 (depo. at 33-35).  At his

---

[7]  Neither party provided the dates that Plaintiff contacted Defendant Charbagi and when Defendant Charbagi left the voicemail.

deposition, Defendant Charbagi testified that he started his criminal report regarding the June 15, 2011, incident prior to receiving the tort claims notice. *Id.* (depo. at 33). Defendant Charbagi further testified, however, that he completed and filed criminal charges against Plaintiff after reviewing the tort claims notice. *Id.* (depo. at 35-36); (Doc. 56-10) at 1-3. Plaintiff was charged with assault upon peace officer, a misdemeanor. (Doc. 56-10) at 1-3; *see* NMSA 1978, § 30-22-21 (Repl. Pamp. 2004).

On April 19, 2013, Plaintiff's criminal trial began. (Doc. 56-13). The magistrate judge, upon motion in open court, dismissed the charge. (Doc. 56-13). After the charge was dismissed, Defendant Charbagi stated, "I better keep my mouth shut before I get in trouble," and then left the courtroom. (Doc. 56-5) at 8 (depo. at 44). Defendant Charbagi also testified that he told the magistrate judge's clerk that he did not agree with the outcome. (Doc. 56-5) at 7 (depo. at 39). On April 30, 2013, the judgment and sentence was filed. (Doc. 56-13). The judgment and sentence did not indicate if the charge was dismissed with or without prejudice. (Doc. 56-13). On May 20, 2013, an amended judgment and sentence was filed finding the charge dismissed without prejudice.[8] (Doc. 56-14).

On June 4, 2013, Plaintiff filed his civil complaint in this cause of action. On June 11, 2013, Defendant Charbagi was personally served the complaint in this matter.[9] *See* (Doc. 56-15); (Doc. 56-16). Approximately on June 11, 2013, Defendant Charbagi called the District Attorney's office to determine if he could re-file the criminal complaint. (Doc. 56-6) at 2 (depo. at 50-51). An Assistant District Attorney approved the re-filing and on June 12, 2013, Defendant

---

[8] It is undisputed, but immaterial that on June 13, 2013, the magistrate judge amended the final order for dismissal with prejudice to "Order Declaring Mistrial Nunc Pro Tunc" and found the mistrial was supported by manifest necessity. (Doc. 56-18).

[9] Defendant disputes that he received the civil complaint. At his deposition, Defendant testified he was informed of the civil complaint from City Hall, but he could not recall whether he knew of the civil complaint before or after re-filing criminal charges. (Doc. 56-6) at 2 (depo. at 52).

Charbagi re-filed the criminal complaint.  (Doc. 56-6) at 2 (depo. at 50-51);  (Doc. 56-17) at 1-3.

IV.    *Discussion*[10]

    A.  *Count III:  First Amendment Retaliation*

      Count III of Plaintiff's amended complaint alleges a claim against Defendant Charbagi for retaliatory prosecution under Section 1983.  Specifically, Plaintiff contends that Defendant Charbagi's actions of filing and re-filing the criminal complaint were undertaken in retaliation for Plaintiff exercising his First Amendment right to file a tort claims notice and civil complaint against Defendants.  Defendant Charbagi argues that he is entitled to qualified immunity on Count III because Plaintiff cannot establish a constitutional violation.

      In the First Amendment context, "[a]ny form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom."  *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (quoting *Lackey v. Cnty. of Bernalillo*, 1999 WL 2461, at *3 (10th Cir.)).  In order to establish a claim for retaliatory prosecution based on speech protected by the First Amendment, Plaintiff must establish that:  (1) he was engaged in constitutionally protected activity; (2) Defendant Charbagi's actions caused Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) Defendant Charbagi's actions were substantially motivated as a response to Plaintiff's exercise of constitutionally protected speech.  *Id.*

      Whether Defendant Charbagi's actions had a "chilling effect" is an objective standard.  *Eaton v. Meneley*, 379 F.3d 949, 954 (10th Cir. 2004).  Additionally, the standard is a rigorous one to satisfy.  *Id.* at 955.  "[A]lthough the objective standard permits a plaintiff who perseveres

---

[10]  The Court will discuss the Counts in the order in which Defendants addressed the Counts in the Motion for Summary Judgment.

despite governmental interference to bring suit, 'a trivial or de minimis injury will not support a retaliatory prosecution claim.'" *Id.* at 954-55 (10th Cir. 2004) (quoting *Poole v. County of Otero,* 271 F.3d 955, 960 (10th Cir. 2001), abrogated by *Hartman v. Moore*, 547 U.S. 250 (2006) (absence of probable cause was required to support *Bivens* claim for inducing prosecution in retaliation for speech)).

While Defendant Charbagi asserts that Plaintiff has failed to establish all three elements, he offers no argument regarding the first element, but assumes *arguendo* that Plaintiff's filing of a tort claims notice regarding a potential civil complaint is constitutionally protected speech. Accordingly, the Court examines only the latter two elements.

Defendant Charbagi is entitled to qualified immunity because Plaintiff has not produced sufficient evidence that he sustained an injury or that Defendant Charbagi's actions would chill a person of ordinary firmness from continuing to engage in the protected speech. The evidence, viewed in the light most favorable to Plaintiff, demonstrates that Defendant Charbagi informed Plaintiff on June 15, 2011, that he would pursue criminal charges. Plaintiff was also informed, prior to filing his tort claims notice, that Defendant Charbagi was still considering filing a criminal complaint. Furthermore, because the criminal charge was dismissed without prejudice prior to Plaintiff's civil action, Plaintiff was aware that the state could re-file the criminal complaint. This evidence suggests that Defendant Charbagi's statements to Plaintiff, prior to filing his torts claims notice, had no effect on Plaintiff's ability to pursue civil action. *See How v. City of Baxter Springs, Kan.*, 217 Fed. Appx. 787, 798 (10th Cir. 2007) (finding that defendant's alleged conduct did not have chilling effect because of plaintiff's continuing ability to express protected speech). Additionally, in light of the criminal complaint filed against him, Plaintiff continued to exercise his First Amendment rights thereafter by filing his civil complaint.

*See Smith v. Plati*, 258 F.3d 1167, 1177 (10th Cir. 2001) (explaining fact that plaintiff persisted in face of allegedly retaliatory actions offered some evidence that defendant's actions did not infringe upon speech).

Despite his ability to pursue civil litigation, Plaintiff alleges that he has suffered "embarrassment and the expense of defending two criminal charges" over a three year period.  In *Poole*, the Tenth Circuit held that, in a selective prosecution claim, the plaintiff sustained an injury because retaliatory criminal charges hindered his ability to pursue and prevail on his civil claim.  271 F.3d at 960.  Here, notwithstanding the criminal charges against him, Plaintiff has continued to exercise his First Amendment rights in pursuing his civil claim against Defendants. Plaintiff has not proffered evidence that criminal charges have hindered him from prevailing or pursuing his civil lawsuit.  The Court, thus finds that any injury sustained by Plaintiff is *de minimis*, and, therefore, not actionable.

Moreover, while it is suspect that the criminal charges were filed in temporal proximity to the civil action, Plaintiff has failed to present evidence that such action was substantially motivated by retaliation.  Plaintiff contends that Defendant Charbagi's statements after the criminal charge was dismissed evidences motivation for retaliation.[11]  Indeed Defendant Charbagi's statements reflect frustration, but that evidence does not equate to substantial motivation in light of the record evidence.  It is undisputed that on June 15, 2011, Defendant Charbagi informed Plaintiff he would file a criminal complaint.  Also, shortly following the incident, Defendant Charbagi completed the use of force form and informed Plaintiff that he was still considering filing charges.  Lastly, at his deposition, Defendant Charbagi testified that he

---

[11] In his reply, Plaintiff infers that Defendant Charbagi influenced the magistrate judge to amend the judgment and sentencing from dismissed to dismissed without prejudice.  Plaintiff has failed to proffer any admissible evidence pursuant to Fed. R. Civ. P. 56(c) to support that assertion.  Moreover, such bare assertions may not preclude summary judgment.  *See Bacchus Indus., Inc.*, 939 F.2d at 891.

intended to file charges, but he did not file the complaint immediately thereafter because, pursuant to statute, he had two years to file a misdemeanor criminal complaint.  Plaintiff, thus, has failed to proffer evidence that Defendant Charbagi was substantially motivated as a response to Plaintiff's exercise of protected speech.

Therefore, the Court concludes that a reasonable jury could not find facts supporting Plaintiff's First Amendment claim because Plaintiff's injury was *de minimis* and the evidence does not support a finding that Defendant Charbagi's actions were substantially motivated by retaliation.  In the absence of a constitutional violation, Defendant Charbagi is entitled to qualified immunity, and, this claim is dismissed.

B.  *Malicious Abuse of Process & Malicious Prosecution*

Defendant Charbagi contends that he is entitled to qualified immunity on Count IV and Count VIII because he had probable cause to arrest Plaintiff for assault on a police officer.  In response, Plaintiff asserts that Defendant Charbagi is precluded from summary judgment on Count IV, malicious abuse of process, because a genuine dispute exists as to Defendant Charbagi's improper use of the legal process.  In support of his assertion, Plaintiff first argues that Defendant Charbagi lacked probable cause to initiate the criminal complaint because Plaintiff's actions were unintentional and Defendant Charbagi was not in imminent danger of a battery.  In the alternative, Plaintiff argues that he can establish misuse of process because Defendant Charbagi's post criminal trial conduct demonstrates irregularity or impropriety suggesting harassment to Plaintiff through his "threat[s] or manipulation" to the magistrate judge to "procure three modified dismissal orders" disfavoring Plaintiff.  In regard to Count VIII, malicious prosecution, Plaintiff again contends that Defendant Charbagi lacked probable cause for the aforementioned reasons.

12

### 1.   Count IV:  Malicious Abuse of Process

The New Mexico state law tort of malicious abuse of process is a relatively new tort resulting from the decision of the New Mexico Supreme Court to combine the tort of abuse of process and the tort of malicious abuse of process.  *See Mosley v. Titus*, 762 F.Supp.2d 1298, 1314-17 (D.N.M. 2010).  In *Durham v. Guest*, the Supreme Court of New Mexico held that the tort of malicious abuse of process elements are:  (1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages.  2009-NMSC-007 at ¶ 29, 145 N.M. 694, 701.  Each element is essential in establishing a claim of malicious abuse of process.  *Id.*

The tort of malicious abuse of process involves balancing "the interest in protecting litigants' right of access to the courts and the interest in protecting citizens from unfounded or illegitimate applications of the power of the state through the misuse of the courts."  *DeVaney v. Thriftway Mktg. Corp.*, 1998-NMSC-001, at ¶ 14, 124 N.M. 512, 517, 953 P.2d 277, 282, *overruled on other grounds by Durham*, 2009-NMSC-007, 145 N.M. 694.  The tort of malicious abuse of process is disfavored because of "the potential chilling effect on the right of access to the courts."  *Fleetwood Retail Corp. of N.M. v. LeDoux*, 2007-NMSC-047, at ¶ 19, 142 N.M. 150, 156 (citation omitted).  In addition, "the tort of malicious abuse of process should be construed narrowly in order to protect the right of access to the courts."  *See Durham*, 2009-NMSC-007 ¶ 20, 145 N.M. at 701.

The first element, an improper use of process, may be shown by:  (1) filing a complaint without probable cause; or (2) an irregularity or impropriety suggesting extortion, delay or harassment, or other conduct formerly actionable under the tort of abuse of process.  *Durham*,

2009-NMSC-007, at ¶ 29, 145 N.M. at 701, 204 P.3d at 26.

>    *a.   Probable Cause*

"[T]he filing of a proper complaint with probable cause, and without any overt misuse of process, will not subject a litigant to liability for malicious abuse of process, even if it is the result of a malicious motive." *DeVaney*, 1998-NMSC-001 ¶ 20, 124 N.M. at 520.  "[A] malicious-abuse-of-process plaintiff attempting to show a lack of probable cause must demonstrate, by the applicable standard of proof, that the opponent did not hold a reasonable belief in the validity of the allegations of fact or law of the underlying claim." *Id.* at ¶ 27, 124 N.M. at 522.  Under New Mexico law, Defendant Charbagi cannot be held liable for malicious abuse of process based on lack of probable cause if probable cause existed to effectuate Plaintiff's arrest, but he can still be liable under a 'procedural impropriety' theory.  *See Mocek v. City of Albuquerque*, ___ F. Supp.2d ___, 2014 WL 936714 *55 (D.N.M.) (citing *Santillo v. N.M. Dept. of Public Safety*, 2007-NMCA-159 ¶¶ 20-22, 143 N.M. 84, 90-91).

"Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Jones v. City & Cnty. of Denver*, 854 F.2d 1206, 1210 (10th Cir. 1988) (citations omitted);  *see also Santillo*, 2007-NMCA-159 ¶ 14, 143 N.M. at 88.  "Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause . . . and in those situations courts will not hold that they have violated the Constitution."  *Saucier v. Katz*, 533 U.S. 194, 206 (2001), *overruled, in part, on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

Here, viewing the facts in light most favorable to Plaintiff, when Defendant Charbagi arrived on scene, Plaintiff approached Defendant Charbagi with both fists raised and repeatedly

yelling, "I'm going to kick you're f***ing a**."[12]  Defendant Charbagi ordered Plaintiff to back

away and stand against a nearby truck.  Plaintiff refused to comply and repeatedly walked toward

Defendant Charbagi while making verbal threats to physically harm.  Ryan and Caldera, in their

depositions, also testified that Plaintiff's behavior and tone directed at Defendant Charbagi was

aggressive.

These facts establish probable cause because a "reasonable officer" could have believed

that based on Plaintiff's threatening and aggressive behavior toward Defendant Charbagi that

Plaintiff had committed or was committing an assault on a police officer.  A reasonable officer,

therefore, could have arrested Plaintiff following the incident based on existing probable cause.

Plaintiff's contention that Defendant Charbagi lacked probable cause because Plaintiff did not

have the requisite *mens rea* is misguided.  The probable cause analysis requires the Court to

review the facts and circumstances known to Defendant Charbagi at the time of alleged criminal

conduct, from an objective standpoint.  *See Devenpeck v. Alford*, 543 U.S. 146, 152-53 (2004)

(holding that the probable cause inquiry is confined to facts and circumstances known to

arresting officer from an objective standard).  The facts show that Defendant Charbagi was not

aware that Plaintiff was suffering from a diabetic seizure until after probable cause for assault on

a police officer was established.  Accordingly, Defendant Charbagi cannot be held liable for

malicious abuse of process based on lack of probable cause.

### b.  *Procedural Irregularity or Impropriety*

Unlike the lack of probable cause theory, the procedural impropriety theory "does not

stand or fall on the merits of the underlying claims."  *Santillo*, 2007-NMSC-189 ¶ 22, 143 N.M.

---

[12]  In their reply, Defendants quote Ryan's deposition where he testified that Plaintiff touched Defendant Charbagi during the incident.  (Doc. 56-2) at 3 (depo. at 10).  At the conclusion of his deposition, however, Ryan testified that he could not "recall [Plaintiff] ever making contact" with Defendant Charbagi.  (Doc. 56-2) at 5 (depo. at 70). Because the Court views the facts in the light most favorable to Plaintiff, the Court will not consider Defendants' alleged fact that Plaintiff touched Defendant Charbagi.

at 91 (quoting *Fleetwood Retail Corp. of N.M.*, 2007-NMSC-047 ¶ 31, 142 N.M. at 159).  A plaintiff may establish procedural irregularity or impropriety by showing:  (1) "'procedural irregularity' involving misuse of procedural devices such as discovery;" or (2) "an act that otherwise indicates the wrongful use of proceeds."  *Fleetwood Retail Corp. of N.M.*, 2007-NMSC-047 ¶ 16, 142 N.M. at 155.  The Supreme Court of New Mexico has provided the following examples to illustrate wrongful use of proceedings:  "excessive execution on a judgment; attachment on property other than that involved in the litigation or in an excessive amount; oppressive conduct in connection with the arrest of a person or the seizure of property, such as illegal detention and conversion of personal property pending suit; extortion of excessive sums of money."  *Id.* (quoting *DeVaney*, 1998-NMSC-001 ¶ 28, 124 N.M. at 522).

In the present case, Plaintiff argues that the following facts establish procedural impropriety and constitute harassment:  (1) Defendant Charbagi's statement in open court following the dismissal of the criminal charge against Plaintiff; (2) that Defendant Charbagi complained to the magistrate judge's clerk about the outcome of the criminal case; (3) that Defendant Charbagi routinely interacts with the magistrate judge; and (4) that the magistrate judge, "without explanation or motion, modified the final order three times after the time limit for appeal had expired."

Plaintiff has not provided this Court with any admissible evidence to support his assertion that Defendant Charbagi utilized his relationship with the magistrate judge, "through threat or manipulation, to procure three modified dismissal orders disfavoring" Plaintiff.  Plaintiff's assertion relies on two proffered exhibits, which are excluded as inadmissible hearsay.  The first exhibit is an affidavit by Plaintiff's criminal defense lawyer that states he witnessed Defendant Charbagi demand to speak to the magistrate judge following the mistrial.  (Doc. 57-11) at 2.

While the affidavit is based on personal knowledge, it includes hearsay testimony that would be inadmissible at trial, and, thus, may not be included in an affidavit to defeat summary judgment. *See* Fed. R. Civ. P. 56(e).  The second exhibit is a portion of the State's response in the criminal action that states, in relevant part, "the fact that Chief Charbagi was unhappy with the mistrial and sought to express his concerns to the judge is entirely understandable, and does not, the State submits, prove vindictiveness."  (Doc. 56-12) at 2.  A third party's description of what may have occurred and what was possibly said is not suitable for summary judgment.  *See Thomas v. Int'l Business Machines*, 48 F.3d 478, 485 (10th Cir. 1995).  Thus, absent a showing of admissibility, Plaintiff may not rely on hearsay to oppose summary judgment.

Assuming *arguendo* that either exhibit is admissible, neither exhibit creates a genuine dispute that Defendant Charbagi utilized his relationship, threatened, or manipulated the magistrate judge to amend his ruling to harass Plaintiff.  The evidence, at best, establishes that Defendant Charbagi was frustrated with the mistrial, which is undisputed by Defendant Charbagi's testimony.  While the summary judgment stage requires this Court "to view the facts in the light most favorable to the non-moving party[,] it does not require" this Court "to make unreasonable inferences in favor of the non-moving party."  *Carney*, 534 F.3d at 1276.  Based on the record evidence, it would be unreasonable for the Court to reach the inference proffered by Plaintiff.

The Court finds that because Plaintiff did not meet the first element of the tort of malicious abuse of process, Plaintiff failed to meet his burden on Count IV and judgment as a matter of law must be granted for Defendant Charbagi.

### 2.   *Count VIII:  Malicious Prosecution*

Similarly to the malicious abuse of process claim, Defendants contend that they are

entitled to summary judgment and qualified immunity because probable cause existed to bring criminal charges against Plaintiff.  Plaintiff reasserts his contention that Defendant Charbagi lacked probable cause because Plaintiff lacked intent and Defendant Charbagi was not in imminent fear of a battery.

To establish a constitutional violation in a malicious prosecution claim, Plaintiff must demonstrate that:  (1) Defendants caused Plaintiff's continued confinement or prosecution; (2) the original action terminated in Plaintiff's favor; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) Defendants acted with malice; and (5) damages.  *Novitsky v. City of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007).

As discussed above, viewing the facts in light most favorable to Plaintiff, the Court finds that a reasonable officer—under the same facts and circumstances surrounding Defendant Charbagi's encounter with Plaintiff—would believe that probable cause existed to effectuate an arrest because Plaintiff had committed or was in the act of committing assault on a police officer. As addressed above, Plaintiff's arguments fail because the probable cause inquiry is an objective standard of the facts and circumstances before the arresting officer at the time of the alleged criminal conduct.  Thus, a reasonable jury could not return a verdict in Plaintiff's favor or find facts supporting a constitutional violation because probable cause existed.  City is accordingly entitled to summary judgment and Defendant Charbagi is entitled to qualified immunity on Count VIII.

### C.  Count II:  Excessive Force

Plaintiff contends that Defendant Charbagi's use of the taser was objectively unreasonable in light of the circumstances because he posed no immediate threat, he was not actively resisting arrest, and that due to his diabetic seizure Defendant Charbagi was required to

18

use less restrictive means to restrain him.  Defendant Charbagi claims he is entitled to qualified immunity because Plaintiff posed an immediate threat, he was actively resisting arrest, and at the time of the incident it was not apparent that Plaintiff was suffering from a diabetic seizure, thus, he was not required to use less restrictive means.

The issue in Fourth Amendment excessive force cases is whether, under the totality of the circumstances, an officer's use of force was objectively reasonable.  *Graham v. Connor*, 490 U.S. 386, 397 (1989).  This test involves viewing the reasonableness of an officer's use of force from an "on-scene" perspective.  *Saucier*, 533 U.S. at 205.  Only that information which was known to the officer at the time of the incident is examined in making this determination.  *See Weigel v. Broad*, 544 F.3d 1143, 1152 (10th Cir. 2008).  An officer who has reasonable, but mistaken belief about a suspect's dangerousness may nevertheless be justified in using more force than necessary.  *Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1249 (10th Cir. 2013) (citing *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1314 (10th Cir. 2009)).

Under *Graham*, courts should balance the "nature and quality of the intrusion on the individual's Fourth Amendment interests" and the "countervailing governmental interests at stake."  *Graham*, 490 U.S. at 396.  This inquiry requires consideration of:  "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.* While the use of a taser is not *per se* unconstitutional, *Hunter v. Young*, 238 Fed. Appx. 336, 369 (10th Cir. 2007), it is "one fact to be considered in the overall 'reasonableness' determination." *Asten v. City of Boulder*, 652 F. Supp. 2d 1188, 1205 (D. Colo. 2009).  Moreover, "it is excessive to use a Taser to control a target without having any reason to believe that a lesser amount of force—or a verbal command—could not exact compliance."  *Casey v. City of Federal Heights*,

509 F.3d 1278, 1286 (10th Cir. 2007).

Turning to the first *Graham* factor, the Court finds that the severity of Plaintiff's crimes were minimal.  Plaintiff was suspected of a petty misdemeanor battery and was eventually charged with a misdemeanor, assault on a police officer.  In any case, the second and third *Graham* factors—looking at Plaintiff's resistance and Defendant Charbagi's safety concerns— outweigh this factor and lead the Court to find that the use of force was reasonable.

Applying the second and third *Graham* factors, Defendant Charbagi acted reasonably given the circumstances he faced on the day in question.  When Defendant Charbagi arrived on scene, Ryan informed him that Plaintiff grabbed Ryan and Caldera in a bear-hug and refused to let go of Ryan.  Immediately thereafter, Plaintiff approached Defendant Charbagi with both fists raised and began yelling, "I'm going to kick your f***ing a**."  Defendant Charbagi repeatedly warned Plaintiff to stay away.  Plaintiff, ignoring Defendant Charbagi's commands, continued to walk quickly toward him, verbally threaten him, and then walk away.  Plaintiff remained in close proximity to Defendant Charbagi during this repetitive behavior.  In response to his failure to comply, Defendant Charbagi warned Plaintiff that he would fire his taser.  When Plaintiff again approached Defendant Charbagi, he deployed his taser.  Defendant Charbagi continued to order Plaintiff to get on the ground and observed that Plaintiff did not comply with his instructions. Instead, Plaintiff, while standing, continued to verbally threaten Defendant Charbagi, yell, and cuss.  Due to Plaintiff's behavior Defendant Charbagi was unable to restrain Plaintiff, requiring Defendant Charbagi to disperse another charge.  Considering the perspective of a reasonable officer on the scene at the time the events unfolded, Defendant Charbagi was reasonable in believing that force was necessary to ensure his safety and the safety of others to justify the use of a taser.  *See cf. Cavanaugh v. Woods Cross City*, 625 F.3d 661, 665-67 (10th Cir. 2010)

(finding taser use objectively unreasonable where officer discharged taser at suspect's back without warning); *Asten*, 652 F. Supp. 2d at 1203-04 (concluding use of a taser unreasonable when suspect had not committed a crime, did not pose a threat to the officers or civilians, and never actively resisted or attempted to evade arrest). Further, the Court finds that Defendant Charbagi's second use of the taser was objectively reasonable. At the moment Defendant Charbagi made the decision to fire the taser a second time, he faced a situation where Plaintiff had been hit by taser prongs, yet was not rendered immobile. Plaintiff was actively struggling and refusing to get on the ground. Defendant Charbagi did not yet have Plaintiff subdued where he could restrain him and Plaintiff's continued resistance in light of the totality of the circumstances justified the second charge.

Furthermore, in considering Plaintiff's diminished capacity due to his diabetic seizure, Defendant Charbagi's use of a taser was objectively reasonable because he was unaware, nor informed that Plaintiff was suffering from a diabetic seizure at the time, and despite his diminished capacity Plaintiff posed a threat to others. *See Zivojinovich v. Barner*, 525 F.3d 1059, 1073 (11th Cir. 2008) ("We have previously held that in a 'difficult, tense, and uncertain situation' the use of a taser gun to subdue a suspect who has repeatedly ignored police instructions and continues to act belligerently toward police is not excessive force.") (citing *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004); *cf. Cardall v. Thompson*, 845 F. Supp. 2d 1182, 1191-92 (D. Utah 2012) (holding that use of taser was unreasonable when defendants were aware nonviolent suspect was suffering from a "psychotic" situation); *Estate of Mathis v. Kingston*, ___ F.Supp.2d ___, 2009 WL 1033771, at *4-5 (D. Colo.) (finding use of taser unreasonable where nonviolent suspect was exhibiting "bizarre behavior").

Because Defendant Charbagi's use of force was objectively reasonable given the totality

of the circumstances, Defendant Charbagi did not violate Plaintiff's Fourth Amendment rights.

Plaintiff has, therefore, failed to demonstrate a constitutional violation and Defendant Charbagi

is entitled to qualified immunity.  Accordingly, Plaintiff's claim is dismissed.

### D.  Count V:  Battery & Negligent Battery

Defendant Charbagi argues that he is entitled to summary judgment on the NMTCA

battery claim because the undisputed material facts demonstrate that his force was reasonably

necessary.  In New Mexico, an officer is "entitled to use such force as was reasonably necessary

under all the circumstances of the case."  *Mead v. O'Connor*, 1959-NMSC-077 ¶ 4, 66 N.M.

170, 173.  Accordingly a battery claim exists only if the officer used unlawful or unreasonable

force.  *Reynaga v. Cnty. Of Bernalillo*, ___ Fed. Appx. ___, 1995 WL 503973, at *2 (10th Cir.).

As addressed above, the Court concludes that Defendant Charbagi's use of a taser was

objectively reasonable under the totality of the circumstances.  Defendant Charbagi, accordingly,

is entitled to summary judgment on Plaintiff's claim for battery under Count V.

The City contends it is entitled to summary judgment on Plaintiff's claim of negligent

battery if Defendant Charbagi is not liable for battery.  Plaintiff failed to address the City's

liability for negligent battery in his response.  The Court agrees with the City and summary

judgment is granted.

### E.  Municipal Liability Under Section 1983 and NMTCA

In Count VI, Plaintiff argues that Defendants are liable because Defendant Charbagi,

acting as a policymaker, was deliberately indifferent to Bayard City Police Department's use of

excessive force and taser policies.  Defendants allege that they are entitled to summary judgment

because:  (1) there is no evidence of constitutional violations; and (2) there is no evidence of

policy or custom that constitutes a driving force behind the alleged deprivation of Plaintiff's

constitutional rights.  In Count V, Plaintiff argues that Defendants are liable for the state law torts of negligent hiring, training, and supervision.  Defendants submit that they are entitled to summary judgment because Plaintiff has failed to proffer evidence that the police department policies and training are inadequate or defective.

A municipality can only be liable under Section 1983 if it took "action pursuant to official municipal policy of some nature [that] caused a constitutional tort."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  In *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), the Supreme Court further developed the *Monell* rule, stating that "[t]he 'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."  *Id.* at 479.  The Supreme Court recognized, however, that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances."  *Id.* at 480.  But the Supreme Court emphasized that "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered."  *Id.* at 481.  Nonetheless, "[i]f the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood."  *Id.*

In providing further contours to the rules regarding municipal liability, the Supreme Court has noted that "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).  In this context, "when an official municipal policy itself violates federal law, issues of culpability

and causation are straightforward; simply proving the existence of the unlawful policy puts an end to the question." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).

The Tenth Circuit has held that "[a] plaintiff suing a municipality under Section 1983 must show:  (1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998) (citing *Monell*, 436 U.S. at 694).  A failure to train claim against a municipality, however, is generally not enough to prove a constitutional violation.  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389-90 (1989).  Instead, Section 1983 plaintiffs can use a municipality's failure to train as one way to make the required showing that a municipal policy or custom was the "moving force" behind an already established constitutional deprivation.  *See id.* at 389.  Therefore, Plaintiff's negligent supervision and training claim, like his claims for constitutional violations against Defendants, requires a predicate showing that Defendants did in fact violate his constitutional rights.  As explained above, the Court has already found that Plaintiff's constitutional rights have not been violated, and therefore, on this basis alone Defendants are entitled to judgment as a matter of law.

However, even if Plaintiff's constitutional rights had been violated, Defendants still would be entitled to summary judgment.  In their Motion for Summary Judgment, Defendants attached copies of the police department's general policies regarding use of force and tasers.  *See* (Doc. 38-6).  Defendants also proffer documentation that officers are required to complete a taser training program every two years.  *See* (Doc. 38-5) at 3.  At the time of the incident, Defendant Charbagi's taser training certification was valid.  *See*  (Doc. 38-5) at 1.  Defendant Charbagi also testified that he tased Plaintiff in the back, in compliance with protocol and training.  (Doc. 63-2)

at 3 (depo. at 14).  Defendant Charbagi further testified that he complied with police department policy by completing a use of force form reporting the taser deployment.  (Doc. 63-2) at 9 (depo. at 57); (Doc. 63-4) at 2-4.  Lastly, Defendant Charbagi testified that he had no knowledge that Plaintiff was suffering from a diabetic seizure at the time.  Based upon the existence of these policies and evidence, Defendants argue that Plaintiff cannot come forward with evidence to show that Defendants' training was inadequate or that Defendants were deliberately indifferent in supervising police officers.  In other words, Defendants have "pointed out" the absence of evidence to support Plaintiff's case, which is all they must do on summary judgment.  *See Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997).

    In his response, Plaintiff asserts that Defendant Charbagi, as the Chief of Police, acted as a final policymaker in creating new policies that were deliberately indifferent to his constitutional rights, thus supporting his failure to train claim.  To establish a municipality's liability for inadequate training on use of force, Plaintiff must show that:  (1) Defendant Charbagi exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training evidence a deliberate indifference on the part of Defendant City; and (4) there is a direct causal link between the constitutional deprivation and the inadequate training.  *See Myers*, 151 F.3d at 1318 (citing *Allen*, 119 F.3d at 841).

    Plaintiff's response only addresses the third element, that Defendant Charbagi was deliberately indifferent, but proffers no evidence that Defendant Charbagi had the final authority to establish new policy.  Plaintiff summarily relies upon *Brown v. Gray*, 227 F.3d 1278, where the Tenth Circuit noted that in satisfying the deliberate indifference element in a failure to train claim, "plaintiff must show that a policymaker, which could be the chief of police, among others,

was deliberately indifferent." *Id.* at 1289.  In *Brown*, however, plaintiff satisfied this element

with testimonial evidence that the chief of police was a "policymaker" because "he was

commander of the police academy," he was "in charge" and an "expert" with respect to training,

he referred to himself as a decisionmaker, and provided explanations for the department's

training policies.  *Id.*  Here, Plaintiff has not provided evidence that Defendant Charbagi was a

policymaker with final authority, as in *Brown*.  Accordingly, Plaintiff has not satisfactorily raised

a genuine issue of material fact as to whether Defendants were deliberately indifferent.

Even if the Court were to assume that Defendants were deliberately indifferent, this

assumption alone would not establish municipal liability.  Plaintiff has not presented sufficient

evidence that any alleged failure to train is widespread and was thereby the "moving force"

behind the alleged constitutional violation. *See Myers*, 151 F.3d at 1316.

Because Defendants did not commit a constitutional violation, and Plaintiff has failed to

come forward with evidence that Defendants took action under a municipal policy to cause a

constitutional tort, Defendants are entitled to judgment as a matter of law.  Plaintiff's claims for

negligent supervision and training under NMTCA fail for the same reasons.  Accordingly,

Plaintiff's claims in Count VI and Count V are dismissed.

### F.  Count VII: Violation of Title II of the Americans with Disabilities Act

Title II of the American Disabilities Act (ADA) states that "no qualified individual with a

disability shall, by reason of such disability, be excluded from participation in or be denied the

benefits of the services, programs, or activities of a public entity, or be subject to discrimination

by any such entity."  42 U.S.C. § 12132.  The Tenth Circuit has explained that, in order to state a

claim under Title II of the ADA, a plaintiff must prove that:  (1) he is a qualified individual with

a disability; (2) he was either excluded from participation in or denied the benefits of some

public entity's services, programs, activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Gohier v. Enright,* 186 F.3d 1216, 1219 (10th Cir. 1999).

In this case, the parties do not dispute whether Plaintiff is "disabled" as defined by the ADA. Rather, Defendants argue that Plaintiff's claim fails because there is no evidence of discrimination based on disability. In response, Plaintiff asserts that Defendants are liable under the wrongful arrest theory and the reasonable accommodation theory.

In *Gohier*, the Tenth Circuit held that a person with a disability can state a claim under the ADA based on police conduct in an arrest or investigation. 186 F.3d at 1220-21. The Tenth Circuit discussed two potentially viable theories involving police conduct recognized by other federal courts, the wrongful arrest theory and the reasonable accommodation theory. Under the wrongful arrest theory, law enforcement may be liable for arresting an individual after incorrectly perceiving the effects of the individual's disability as illegal conduct. *Id.* (citing *Lewis v. Truitt,* 960 F. Supp. 175, 176-77 (S.D. Ind. 1997); *Jackson v. Town of Sanford,* 1994 WL 589617, at *6 (D. Me. Sept. 23, 1994)). In contrast, the reasonable accommodation theory is based on a proper investigation or arrest of a person "with a disability for a crime unrelated to that disability." *Id.* The Court further clarified that "a broad rule categorically excluding arrests from the scope of Title II . . . is not the law." *Id.*

### 1. Wrongful Arrest Theory

Plaintiff contends that he did not commit an assault on Defendant Charbagi because Defendant Charbagi did not reasonably believe he was in immediate risk of a battery, therefore Plaintiff's actions were lawful. Defendants argue the contrary.

For the wrongful arrest theory to apply, the conduct that is mistaken for criminal activity

27

must actually be lawful.  *See Jackson,* 1994 WL at *6 (wrongful arrest theory applied when stroke victim was arrested for driving under the influence, even though he was sober); *Lewis,* 960 F. Supp. at 178 (wrongful arrest theory applicable where deaf man was charged with resisting arrest, when in fact he could not hear the officers' orders); *cf. Gohier*, 186 F.3d at 1221 (wrongful arrest theory not apply when a schizophrenic man physically threatened officer because the behavior was an unlawful assault).  Notably, the wrongful arrest theory focuses on the circumstances known to the officer at the time an arrest is made, and how police responded. *Compare Lewis*, 960 F. Supp. at 176-77 (deciding that plaintiff's arrest for resisting law enforcement was unwarranted because officers knew he was deaf), *with Gohier*, 186 F.3d at 1222 (concluding that officer's use of force in self-defense was warranted given plaintiff's threatening conduct).  The question is not whether the police were ultimately correct in assessing the legality of the plaintiff's conduct, but whether that assessment was reasonable.  *See Gohier*, 186 F.3d at 1222 (holding that when the officer shot schizophrenic plaintiff, officer reasonably thought it was necessary to avoid serious harm).

Here, as discussed earlier, the Court found that Defendant Charbagi reasonably believed that Plaintiff posed a threat to Defendant Charbagi and others.  The evidence, viewing in the light most favorable to Plaintiff, demonstrates that Plaintiff physically threatened Defendant Charbagi, constituting an unlawful assault.  *See id.* at 1221.  Because Plaintiff has failed to proffer sufficient evidence to show that his actions were lawful, Defendants are entitled to summary judgment on the wrongful arrest claim.

### 2.   *Reasonable Accommodation Theory*

Plaintiff alleges that Defendants failed to provide reasonable accommodation when Defendant Charbagi filed criminal charges because:  (1) Defendant Charbagi had "no training on

recognizing diabetic shock or seizures;" and (2) Defendant Charbagi knew Plaintiff lacked the requisite *mens rea* due to his diabetic seizure, and, therefore, should not have charged him with a specific intent crime.  Defendants summarily argue that the duty to accommodate did not exist because of Plaintiff's threatening behavior and that Plaintiff's *mens rea* argument is inapplicable.

Under the reasonable accommodation theory, the contention is that the officer "failed to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees." *Id.* (citing *Gorman v. Bartch,* 152 F.3d 907, 912-13 (8th Cir. 1998)).  This type of discrimination, however, does not apply until exigent circumstances have dissipated.  *See Sudac v. Hoang*, 378 F. Supp. 2d 1298, 1306 (D. Kan. 2005) (holding that reasonable accommodation not apply when suspect poses immediate threat to officers or others); *see also Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000) (concluding that Title II not apply to "officer's on-the-street responses to reported disturbances" until officer secures the scene and no threat present);  *Thompson v. Williamson*, 219 F.3d 555, 557 (6th Cir. 2000) (finding that denial of benefits or services was the result of subjects threatening behavior, not officer's inadequate training with mentally disabled subjects).

In the present case, Defendant Charbagi made reasonable modifications to his arrest and investigation procedures in order to ensure that Plaintiff did not suffer greater injury or indignity than other arrestees.  As addressed earlier, the Court has concluded that Defendant Charbagi used reasonable force due to the immediate threat that Plaintiff posed.  Therefore, Title II of the ADA did not apply until the threat dissipated, i.e., once Plaintiff was restrained.  After Plaintiff was restrained, it is undisputed that Defendant Charbagi was informed by an EMT that Plaintiff was suffering from low blood sugar.  Defendant Charbagi then accommodated Plaintiff's disability by not taking Plaintiff into custody because Plaintiff was receiving medical attention.  Defendant

Charbagi, however, informed Plaintiff that he would press charges because of Plaintiff's unlawful behavior.  The Court finds that because Plaintiff posed an immediate threat, Title II of the ADA did not apply while Defendant Charbagi was attempting to restrain Plaintiff and secure the scene.

Furthermore, Plaintiff has failed to provide sufficient evidence that he was denied an accommodation when Defendant Charbagi filed criminal charges.  First, as addressed earlier, Plaintiff's claim that he lacked the requisite *mens rea*, and therefore, should not have been charged for assault on a police officer, is a defense that Plaintiff could assert at his criminal trial, not in this cause of action.  Second, while the record shows that Defendant Charbagi holds a strong opinion regarding Plaintiff's ability to monitor his blood sugar, that evidence does not create a genuine dispute as to whether Defendant Charbagi discriminated against Plaintiff because he is diabetic.  It is undisputed that at the time of the incident, Defendant Charbagi informed Plaintiff that he would file charges.  Accordingly, the Court concludes that any alleged denial of benefits or services occurred because of Plaintiff's unlawful behavior, not because he is diabetic.  Hence, Defendants are entitled to summary judgment on Plaintiff's reasonable accommodation claim.

IT IS ORDERED that:

1.  Defendants' Motion for Summary Judgment (Doc. 38) is granted;

2.  summary judgment is entered in favor of Defendants; and

3.  all of Plaintiff's claims against Defendants are dismissed with prejudice.


_____
UNITED STATES DISTRICT JUDGE